IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 14-cr-00423-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. RYAN APPLEGATE,

    Defendant.

_____

## ORDER
_____

This matter is before the Court on defendant Ryan Applegate's *pro se* request for compassionate release [Docket No. 432] and Motion to Supplement Motion for Compassionate Release [Docket No. 438]. Pursuant to General Order 2020-07, court-appointed counsel entered an appearance on behalf of Mr. Applegate. Docket No. 435. On March 28, 2021, Mr. Applegate filed his supplement through counsel. Docket No. 438. The government filed an objection on April 19, 2021. Docket No. 444. Mr. Applegate did not file a reply.

### I. BACKGROUND

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), Mr. Applegate pled guilty to Count 2 of the superseding indictment, charging a violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(A) – possession of 500 grams or more of methamphetamine with intent to distribute. Docket No. 89 at 2; Docket No. 218 at 1. On September 11, 2015, the Court accepted a plea agreement, Docket No. 216 at 3, and, on December 11, 2015, sentenced Mr.

Applegate to 168 months imprisonment with five years of supervised release. Docket No. 289 at 2. Mr. Applegate did not appeal his conviction or sentence, but did file a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Docket Nos. 406, 408. The Court found that Mr. Applegate's collateral attack waiver was enforceable and that his ineffective assistance of counsel claim failed on its merits. *See generally* Docket No. 425. Mr. Applegate is currently incarcerated at the Federal Correctional Institution Forrest City Low ("FCI Forrest City"). Docket No. 438 at 6; Docket No. 444 at 4.

On September 21, 2020, Mr. Applegate filed a letter "under compassionate release and CARES Act" stating that he was in danger of contracting COVID-19, that he had not been given his medication since June 3, 2020, and that his mental health had been deteriorating. Docket No. 432 at 1–3. Mr. Applegate requested release to home confinement in Kentucky where his ex-wife and minor children live. *Id.* at 4. On March 28, 2021, Mr. Applegate, through counsel, filed a motion to supplement his motion for compassionate release, Docket No. 438, which the Court construes as superseding Docket No. 432 and to be the operative motion for compassionate release. *See Nosewicz v. Janosko*, No. 16-cv-00447-PAB-KLM, 2020 WL 4041457, at *2 (D. Colo. July 17, 2020) ("[I]t is within the Court's discretion to grant a motion to amend a motion, and 'there is no reason to deny the amendment when the [Court] believes it would be in the interests of justice to permit it.'" (quoting 5 Fed. Prac. & Proc. § 1194)). The United States has objected to both motions. Docket No. 444.

## II. ANALYSIS

Title 18 section 3582(c)(1)(A) permits a district court to "reduce [a] term of imprisonment" in certain circumstances[1] "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Specifically, a court may order an inmate's release if the court finds that (1) "extraordinary and compelling reasons warrant such a reduction; . . . and that [(2)] such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" as set out in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). The government does not dispute that Mr. Applegate has met the exhaustion requirement. Docket No. 444 at 1. Accordingly, the Court has jurisdiction to consider the motion.

### A. **Extraordinary and Compelling Reasons**

The Sentencing Commission has identified four categories of "extraordinary and

---

[1] Under 18 U.S.C. § 3582(c)(1)(A), the Court may order release if it finds that:

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

compelling" reasons that may warrant a sentence reduction under the First Step Act:

(A) Medical Condition of the Defendant.–

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is–

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.– The defendant (I) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.–

(I) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.– As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt. n.1. *See also United States v. Carr*, 2021 WL 1400705, at *4

(10th Cir. Apr. 14, 2021) (unpublished) (district court has discretion to conclude that application notes to Section 1B1.13 still provide the best definition and description of "extraordinary and compelling reasons" under the circumstances of particular case); *United States v. Ford*, 2021 WL 1721054, at *3 (D. Kan. Apr. 30, 2021); *United States v. Warren*, 2021 WL 1575226, at *3 (D. Kan. Apr. 22, 2021). While Mr. Applegate does not specifically cite to one of the subsections above, he requests relief due to his mental health and states that there is precedent for courts finding "extraordinary and compelling circumstances" where the COVID-19 pandemic has resulted in the unavailability of drug and mental health treatment, as well as confinement in circumstances that can degrade, rather than support, mental health. Docket No. 438 at 8 (citing *United States v. Reyes*, 2021 WL 22717 (S.D.N.Y. Jan. 4, 2021)).[2]

Mr. Applegate states that he was diagnosed at age 14 with "major depression," which is now known as "major depressive disorder." *Id.* at 2. After transfer to his current facility, FCI Forrest City, he was prescribed Prozac. *Id.* at 2–3. The Prozac did not relieve his depression, and he attempted suicide. *Id.* at 3. He was then put on mirtazapine, which provided relief but was discontinued. *Id.* He states that he has recently been able to get the medication ordered, yet therapy has been unavailable because of COVID-19 protocols at the facility. *Id.* Additionally, Mr. Applegate states

---

[2] Mr. Applegate also claims that his ex-wife has struggled to support herself and her four children because she does not have child care when her children are not in school and that one of her children suffers from "attention deficit hyperactivity disorder, oppositional defiant disorder, and intermittent explosive disorder." Docket No. 438 at 3–4. Mr. Applegate states that his ex-wife "desperately needs Mr. Applegate's help" to care for the children. *Id.* at 4. He does not, however, appear to argue for relief under subsection (C), which pertains to family circumstances. *Id.*

that his sense of hopelessness and despair have increased because his opportunities to work and take classes, which he enjoys, have been curtailed, and the facility appears indifferent to the suffering of inmates.  *Id.*

The government acknowledges that an unvaccinated inmate who presents a risk factor identified by the Centers for Disease Control as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling reason under subsection (A) because such an individual may be less able to protect himself from an unfavorable outcome.  Docket No. 444 at 6.  Any argument of risk to Mr. Applegate due to the COVID-19 pandemic, however, is low, the government contends, because there are no inmates and no staff who are currently positive for COVID-19 at FCI Forrest City,[3] and, as of April 13, 2021, Mr. Applegate is fully vaccinated.  *Id.* at 4–5.  Moreover, the government argues, the presence of COVID-19, on its own, cannot justify compassionate release.  *Id.* at 6 (citing *United States v. Hegyi*, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4. 2020); *United States v. Tartaglione*, 2020 WL 3969778, at *5–6 (E.D. Pa. July 14, 2020) ("a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held")).

The government states that Mr. Applegate is currently listed as a "Care 1" or

---

[3] As of the date of this order, there appear to be no active cases of COVID-19 among the inmate or staff populations.  *See* Federal Bureau of Prisons, *COVID-19 Cases*, www.bop.gov/coronavirus/index.jsp (last accessed May 12, 2021).

"simple care" inmate by the Bureau of Prisons. *Id.* at 8 (citing Docket No. 444-3). This level is the lowest level designation. *Id.* The government also concedes that many voluntary programs offered to inmates had to be "paused or curtailed due to the highly contagious nature of the disease and the circumstances brought about by the pandemic." *Id.* However, the government states, programing is returning, and Mr. Applegate participated in a program in October 2020. *Id.* (citing Docket No. 444-5). As opportunities increase, the government hopes that the impact of COVID-19 protocols on Mr. Applegate will diminish. *Id.*

The Court finds that Mr. Applegate has not shown extraordinary and compelling reasons justifying release due to his health. First, because he has been fully vaccinated against COVID-19, his health risks due to the pandemic are significantly decreased. *See United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) ("absent some shift in the scientific consensus, [d]efendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)."). Second, the Court finds it likely that prison programming will increase again soon as more inmates and staff are vaccinated against COVID-19. Finally, Mr. Applegate's medical records indicate that, at an April 9, 2021 encounter, he stated that he was "doing much better" since re-starting mirtazapine, that he was sleeping well, and that he has had no problems with the medication. *See* Docket No. 444-2 at 1.

Though Mr. Applegate does not argue for release under subsection (D), the Court will consider its applicability. Subsection (D) allows for release for reasons other

7

than those set out in subsections (A)–(C), "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, cmt. n.1(D). "[T]he BOP has issued Program Statement 5050.50 (2019), which lists factors which the BOP uses in determining whether extraordinary and compelling reasons exist for compassionate release." *United States v. Turns*, 2020 WL 2519710, at *3 (S.D. Ohio May 18, 2020). "BOP Program Statement 5050.50 identifies several nonexclusive factors to determine whether 'other' extraordinary and compelling reasons exist: the defendant's criminal and personal history, nature of the offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'" *Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (unpublished) (quoting BOP Program Statement 5050.50 at 12 (2019)).

Mr. Applegate does not specifically argue that these subsection (D) factors weigh in favor of compassionate release, but, as discussed above, instead argues that his mental health issues, combined with decreased programming and health risks caused by the COVID-19 pandemic, constitute an extraordinary and compelling reason for compassionate release. *See* Docket No. 438 at 8. Because the list of factors set out in Program Statement 5050.50 is nonexclusive, the Court will consider whether Mr. Applegate has met his burden "to prove that h[is] medical conditions create extraordinary and compelling reasons warranting a sentence reduction." *See United States v. Edington*, No. 19-cr-00174-REB-1, 2020 WL 2744140, at *4 (D. Colo. May 27, 2020).

"The existence of the COVID-19 pandemic no doubt can be described as

8

'extraordinary' insofar as it is [b]eyond what is usual, customary, regular, or common." *United States v. Gonzalez*, 467 F. Supp. 3d 1075, 1079 (D. Colo. 2020) (internal quotation marks omitted). "However, because the apposite test is stated in the conjunctive, the dangers presented by the pandemic – which impact us all, worldwide – also must be 'compelling' in [the movant's] particular circumstances." *Edington*, 2020 WL 2744140, at *2; *see also United States v. Bolze*, 2020 WL 2521273, at *7 (E.D. Tenn. May 13, 2020) ("[T]he COVID-19 pandemic cannot present an extraordinary and compelling reason alone because the policy statement directs courts to consider individual reasons for compassionate release, not general threats to the prison population."). It is for this reason that the cases Mr. Applegate relies on to support his arguments for release are distinguishable. First, unlike Mr. Applegate, none of the defendants in the cases defendant cites were fully vaccinated. Second, unlike Mr. Applegate, none of the defendants appeared to have their health issues under control. Third, each of the defendants either had a comorbidity that increased the COVID-19 risk or the court noted other considerations justifying compassionate release not present here. *See Reyes*, 2021 WL 22717 (no mention of vaccines; finding release appropriate where defendant had served 90% of his 30-month sentence, the facility had no mental health treatment, and inmates were only allowed out of their cells three times a week for a 15-minute shower); *United States v. Johnson*, 464 F. Supp. 3d 22, 37 (D.D.C. 2020) (mentioning vaccines being months away and finding defendant's pulmonary hypertension and obesity created grave risk); *United States v. Pina*, 2020 WL 3545514 (S.D.N.Y. June 29, 2020) (no mention of vaccination; doctor feared for

defendant's well-being; defendant was not able to obtain treatment); *United States v. Levy*, 2020 WL 3218110 (D. Kan. Jun. 15, 2020) (no mention of vaccination; defendant suffered from comorbidities of age and hypertension). The Court thus finds that Mr. Applegate has failed to demonstrate that his medical conditions create an extraordinary and compelling reason to grant him compassionate release.

In addition, the Court finds that the other compassionate release factors under subsection (D) – including Mr. Applegate's criminal history, the nature of his offense, the length of the sentence imposed and amount of time served, his current age and age at the time of offense and sentencing, and "[w]hether release would minimize the severity of the offense," *Saldana*, 807 F. App'x 816, 819 – do not weigh in favor of release. *See United States v. Ramirez*, No. 14-cr-00249-PAB-2, 2021 WL 168448, at *4 (D. Colo. Jan. 19, 2021).

As discussed below, Mr. Applegate has at least 10 convictions as an adult, five of which involved controlled substances, and seven of which were felonies. *See* Docket No. 268 at 9–14. His probation was also revoked twice, *id.*, which indicates a pattern of failing to comply with the terms of supervision. *See Ramirez*, 2021 WL 168448, at *4. The Court sentenced Mr. Applegate to 168 months imprisonment; he has served around half of his sentence. *See* Docket No. 444-1 (good conduct release projection). Releasing Mr. Applegate now would minimize the seriousness of his offenses. *See Ramirez*, 2021 WL 168448, at *5 (citing *Delacruz v. United States*, 2020 WL 3270503, at *5 (D.N.H. June 17, 2020) (finding sentence reduction would minimize impact and seriousness of offense where defendant had only served half of his sentence)). Thus,

10

the Court concludes that Mr. Applegate has not demonstrated extraordinary and compelling circumstances under U.S.S.G. § 1B1.13, cmt. n.1 (A) or (D) so as to entitle him to release under 18 U.S.C. § 3582(c)(1)(A).

### B. Section 3553(a) Factors

Even if Mr. Applegate had demonstrated that extraordinary and compelling reasons exist warranting his release under 18 U.S.C. § 3582(c)(1)(A)(i), the Court would need to consider whether compassionate release is appropriate in light of the sentencing factors set out in 18 U.S.C. § 3553(a). *See, e.g.*, *United States v. Lochmiller*, No. 09-cr-00529-PAB, 2020 WL 4783433, at *2 (D. Colo. July 20, 2020) ("[T]he Court must consider whether the factors outlined in 18 U.S.C. § 3553(a) support" the sentence reduction.); *see also Saldana*, 807 F. App'x at 819 ("Under § 3582(c)(1)(A)(i), a district court may grant a sentence reduction . . . after considering the 18 U.S.C. § 3553(a) factors.") (internal quotations omitted). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrent to criminal conduct, [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). "The Court also considers whether the Defendant is a danger to the safety of any other person or to the community." *United States v. Tate*, 2020 WL 3791467, at *5 (C.D. Ill. July 7, 2020) (citing U.S.S.G. § 1B1.13).

Mr. Applegate does not address the specific factors set forth at § 3553(a). He

states that he has served "slightly more than 50% of his sentence," that, since his incarceration began, he has worked and taken all classes available to him, and that he is participating in the Release Preparation Plan. Docket No. 438 at 1, 9. If released, Mr. Applegate would live with his ex-wife in Kentucky because, when the two were married, he "worked hard, stayed sober, and was a successful parent." *Id.* at 11. He also states that his parents and sister are willing to travel to Kentucky to help him. *Id.*

The government argues that Mr. Applegate has served only half of his sentence and that he committed very serious crimes, which makes him a danger to the community, both of which weigh against release. Docket No. 444 at 11–12. The government characterizes Mr. Applegate as a "large-scale distributor of narcotics in Northern Colorado." *Id.* at 12. The presentence investigation report states that, when agents raided a hotel room that he rented, agents found over 4,522.2 grams of methamphetamine, 96.3 grams of heroin, 39 ecstasy pills, and almost $9,500 in cash. Docket No. 268 at 6, ¶ 18. Mr. Applegate was later found with an additional 17.89 grams of heroin and a loaded semi-automatic pistol. *Id.*, ¶ 19. A search of his home found six additional firearms. *Id.* at 6–7, ¶ 20. He also admitted to having purchased 12 pounds of methamphetamine and a half-pound of heroin shortly before his arrest. *Id.* at 7, ¶ 21. The report states that the parties agreed that the government's evidence would be that a search of Mr. Applegate's hotel room found 11.5 pounds of methamphetamine, which he admitted to possessing and intending to distribute. *Id.* at 5, ¶¶ 11–12. Far from being "a simple street level dealer," the government characterizes Mr. Applegate as "someone with significant connections and an ability to

sell a large quantity of [] dangerous drugs." Docket No. 444 at 12–13.

Mr. Applegate's criminal history is significant. As mentioned above, he is a career offender with as many as seven prior felony convictions. *See* Docket No. 268 at 9–14. While Mr. Applegate argues that, if he were sentenced today, he would have a "legitimate argument" for a sentencing guideline range much lower than the Court calculated, Docket No. 438 at 9, the Court has already considered these arguments in Mr. Applegate's objections to the presentence report, Docket No. 256, and sentencing statement, Docket No 267, and need not reconsider them now. *See* Docket No. 290 (granting Docket No. 267 and accepting the plea agreement). Indeed, the Court took these arguments into account when it sentenced him to a term of 168 months, a significant variance from the guideline range of 262 to 327 months. *Id.*

The Court finds that the sentence imposed, well below the guideline range, was an appropriate balance of the sentencing factors given the seriousness of the crimes. Furthermore, the sentence promoted respect for the law and just punishment for the offense and will deter criminal conduct and protect the public from future crimes of Mr. Applegate. Granting Mr. Applegate's motion would undermine these sentencing factors. *See United States v. Woods*, 2020 WL 3452984, at *3 (S.D. Miss. June 24, 2020) ("Further, Woods has only served about a fourth of her sentence. . . . The Court finds that, under these circumstances, a reduction in Woods's sentence would not reflect the gravity of the offense."); *United States v. Schwab*, 2020 WL 3452651, at *1 (E.D. La. June 24, 2020) ("The Court finds that defendant's sentence would not 'reflect the seriousness of the offense' were he released after serving eighty-two months, or

13

about thirty-four percent, of his term of imprisonment.").

Having determined that Mr. Applegate has failed to establish extraordinary or compelling circumstances under § 3582(c)(1)(A) or that a reduction in sentence is appropriate in light of the § 3553(a) factors, the Court will deny the motion for compassionate release.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the request for compassionate release [Docket No. 432], superseded and supplemented by Docket No. 438 is **DENIED**.

DATED May 12, 2021.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge